# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kenneth D. Johnson, (M34606),<br><br>Petitioner,<br><br>v.<br><br>Kimberly Butler, Warden,<br>Menard Correctional Center,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 16 C 6741

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Petitioner Kenneth D. Johnson, a prisoner incarcerated at the Stateville Correctional Center, brings this *pro se* amended habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2011 double murder conviction from the Circuit Court of Cook County. For the reasons set forth below, the Court denies the petition on the merits, and declines to issue a certificate of appealability.

## I. Background

The Court draws the following factual history from the state court record. (Dkt. 25.) State court factual findings are presumed correct, and Johnson has the burden of rebutting the presumption by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)). Johnson has not made such a showing.

### A. Johnson's Murder Conviction

Following a jury trial, Johnson was found guilty of shooting two men at a carwash in Chicago's South Austin neighborhood. *Illinois v. Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *1 (Ill. App. Ct. 2014). The shootings occurred on February 13, 2009, around

8:00 p.m. A number of people were present in the carwash and surrounding area on the street. Several eyewitnesses identified Johnson as the shooter during his trial.

The eyewitnesses testified to four additional relevant points. First, the eyewitnesses gave varying heights for the shooter of 5'7", 5'8", 5"11', and 6'2". Second, the shooter walked with a limp. Third, the shooter was observed standing on the hood of a car inside the carwash shooting at one of the victims, (and police investigators recovered a footprint via the use of gel lifts from the hood of the car). Fourth, the shooter was seen fleeing the scene in a green Buick Regal. A witness reported the license plate number of the getaway car to the police and police discovered that the car was registered to Johnson. The police later located the car on March 27, 2009, a month and half after the shooting. The car's interior was burned from the inside out, and the license plates were removed, however, the car's VIN number remained intact in the vehicle allowing its identification.

Johnson was arrested on March 17, 2009, at his son's home. The police also seized three pairs of Timberland brand boots during the arrest. An Illinois State Police Crime Lab forensic scientist compared the boots to the footprint recovered from the hood of the car. The boots, which ranged in sizes from nine to nine and a half, were consistent in pattern, design, and size to the shoe print recovered at the crime scene. The forensic scientist, however, could not definitively link the seized Timberland boots to the recovered print because the quality of the gel print was poor. *Id.*

Johnson testified on his own behalf at trial. He explained he was shot, two and a half months before the car wash shooting, on December 1, 2008, while driving his car with his daughter. He did not know who shot him in December 2008, did not know either of the car wash

shooting victims from February 2009, and had no reason to suspect that they were involved with his shooting. He further explained he was only 5'4" tall and wore size seven and a half shoes. *Id.*

Although Johnson was shot while driving the green Buick Regal back on December 1, 2008, he explained he no longer used it at the time of the second shooting, instead allowing his cousin, Ted Brown, to drive it. The car was sold sometime between the car wash shooting on February 13, 2009, and his arrest on March 17, 2009, but Johnson denied personally selling the car.

Johnson further explained that he could not jog or run with a limp following his shooting in December 2008. This was relevant because some of the eyewitnesses who identified Johnson as the shooter said they saw him jogging during the February 13th shootings. An orthopedic surgeon testified as an expert on Johnson's behalf regarding his medical condition. The expert reviewed Johnson's medical records and explained that Johnson was struck in the abdomen and hip during his December 2008 shooting. The expert opined that Johnson would be unable to jog with his injuries and would likely have walked with a significant abnormality in his gait if he tried to move at a fast rate. *Id.*

Johnson's mother testified on his behalf. She saw him multiple times a week in January and February 2009 and explained that Johnson always used crutches to walk during that period while he was recovering from his December 2008 gunshot injuries. Johnson's mother confirmed that Johnson did not drive his car following the December 2008 shooting, and that Johnson's cousin drove the car when Johnson was not using it. The mother added that Johnson stood only 5'4" tall, but that Johnson's 27-year-old son, was between 5'7" and 5'8".

Johnson provided two alibi witnesses. The first, Michael McGee, testified that Johnson was with him between 11:00 a.m. and 8:30 p.m. on February 13, 2009, when the murders occurred. Additionally, Johnson's brother testified that Johnson was with him from 8:30 p.m. until 9:00 p.m. that evening. Both men testified that Johnson was not near the car wash that day.

The jury found Johnson guilty of two counts of murder and the trial court sentenced him to a mandatory term of life imprisonment. The Illinois Appellate Court affirmed Johnson's conviction on direct appeal.

### B.     Johnson's Efforts to file a State Postconviction Petition.

Johnson initiated the present habeas corpus proceeding following the completion of his direct appeal. He also sought to stay these proceedings so that he could bring a state postconviction petition. Johnson's stay motion asserted that he had hired attorney Charles K. Piet to represent him in the postconviction matter. The Court granted the stay request and instructed the parties to file regular status reports on the pending postconviction proceedings.

On February 3, 2017, approximately three months after this case was stayed, Respondent's counsel, an assistant attorney general from the Office of the Illinois Attorney General, filed a status report explaining that the Circuit Court of Cook County had no record of a postconviction petition filed by Johnson. Three weeks later, on February 24, 2017, Respondent's counsel filed a follow up status report stating she spoke to Mr. Piet via the telephone that day. According to the status report, Mr. Piet related to Respondent's counsel that he (Piet) "had been hired by Johnson's family to review Johnson's case, [but that] he was never retained to file a postconviction petition on Johnson's behalf and did not do so."

The Court entered a minute order on February 24, 2017, ordering Johnson (who was *pro*

4

*se* in this Court) to file a written status report detailing the status of his postconviction petition proceedings. The Court's order warned Johnson that failure to comply with its order would result in dismissal of the case. The Court also set the case for status on March 30, 2017.

Johnson did not file a status report prior to the March 30th status hearing, but he did file an amended habeas corpus petition. At the March 30th status hearing, the Court ordered the stay lifted and Respondent to answer or otherwise respond to the habeas corpus petition.

Several weeks later, on April 25, 2017, Johnson filed a response regarding Respondent's representations in the February 24th status report as to Attorney Piet. Johnson explained that this was a "complete surprise," as "Petitioner's family paid counsel [Piet] initial attorney fees to represent Petitioner in the postconviction proceedings. . . ." Further, Johnson explained he previously wrote to Piet out of concern of the statute of limitations governing state postconviction petitions, 725 ILCS § 5/122-1(c).

Johnson also submitted a letter dated May 27, 2016, from Piet to Johnson written in response to a prior letter from Johnson to Piet. (Dkt. 23, pg. 4.) Piet addressed Johnson's questions regarding the statute of limitations for a postconviction petition, and also whether Piet believed Johnson had a valid ineffective assistance of counsel claim. *Id.* Piet further raised a lack of cooperation from Johnson's family regarding Piet's payment for Petitioner's representation, and providing promised eyewitnesses regarding the case. *Id.* In the closing of his letter to Johnson, Piet stated, "I am frustrated by the lack of cooperation I have received from your family. Despite their assurances, they have not contacted me either with respect to financial arrangements, nor, more importantly, with the information that they promised. Until I receive their complete cooperation, my hands are tied." *Id.* Johnson would later inform the

Court that he had a new private attorney, Mr. Dean Morask, representing him in matters before the state court. (Dkt. 30.) Johnson has never provided any information suggesting that he ever filed a postconviction petition in state court.

## II.  Analysis

The amended habeas corpus petition alleges: (1) ineffective assistance of trial counsel regarding counsel's closing argument; (Dkt. 19, pgs. 5, 8-9.) (2) ineffective assistance of trial counsel for failing to call expert witnesses regarding his height and shoe size, and failing to challenge the prosecution's expert; *id.* at 5, 10-11, (3) prosecutorial misconduct through misstatement of evidence, improper attacks on Johnson's character, and improper and inflammatory remarks; *id.* at 6, (4) ineffective assistance of trial counsel for failing to consult an expert in preparation of Johnson's defense; *id.* at 6, 12-15; (5) ineffective assistance of trial counsel for failing to obtain an expert regarding Johnson's height; *id.* at 6, 15-19; (6) ineffective assistance of trial counsel for failing to investigate a Fourth Amendment challenge to the search of Johnson's son's home resulting in the seizure of the boots introduced at Johnson's trial; *id.* at 19-24; (7) ineffective assistance of trial counsel for failing to investigate the crime scene; *id.* at 25-26; (8) ineffective assistance of appellate counsel for failure to raise trial counsel's ineffectiveness regarding the prosecution's witness Lernard Williams; *id.* at 27-29; (9) ineffective assistance of appellate counsel for failing to assert trial counsel's ineffectiveness for failing to challenge prosecutorial misconduct during closing arguments; *id.* at 29-31; and, (10) ineffective assistance of appellate counsel for failing to raise trial counsel's failure to challenge the prosecutor's conduct during closing arguments. *Id.* at 31.

Although Johnson alleges multiple instances of ineffective assistance of counsel,

technically, ineffective assistance of counsel is a single claim. *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)). But, Johnson must raise the factual basis for each aspect of the alleged ineffective assistance of counsel to preserve the respective argument. *Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). Thus, the Court shall consider each ineffective assistance of counsel argument individually.

However, before turning to the individual arguments, the Court recognizes that the state appellate court considered both Johnson's individual ineffective assistance of trial counsel arguments, and also evaluated defense counsel's performance at trial as a whole. *See Pole*, 570 F.3d at 934 (quoting *Peoples*, 403 F.3d at 848) ("We assess counsel's work as a whole, and 'it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief.'"). The appellate court stated,

> Overall, based on our review of the record, counsel's actions in this case were not deficient. Counsel presented a coherent opening statement and closing argument, thoroughly cross-examined the State's witnesses, which included highlighting the factual inconsistencies in the eyewitnesses' testimony, put on an alibi defense with several witnesses, and offered an expert medical witness to argue that defendant physically was incapable of doing some of the things the witnesses observed. Consequently, defendant has failed to show that his counsel was ineffective.

*Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *4. Upon a review of the record, the Court concludes that the state court's evaluations of counsel's performance as a whole was neither contrary to, nor an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).

## A.      Argument One

Johnson alleges ineffective assistance of trial counsel during closing arguments. He asserts that counsel failed to point out inconsistencies in the evidence regarding his height and shoe size. Johnson testified he was only 5'4" tall when the eyewitnesses accounts identified the shooter at heights of 5'7", 5'8", 5"11', and 6'2". Furthermore, Johnson said his shoe size is seven and one-half inches when the shoeprint recovered at the shooting matched to size nine and nine and one-half boots. Johnson believes trial counsel should have emphasized these inconsistencies during closing arguments to demonstrate reasonable doubt.

Johnson's argument was adjudicated by the state appellate court on direct appeal resulting in it being covered by the requirements of the Antiterrorism and Effective Death Penalty Act (AEDPA).1 *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005). A writ of habeas corpus cannot issue unless Johnson demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Under the AEDPA, the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"'A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially

---

1

Petitioner raised the argument before the appellate court on direct appeal, but failed to include it in his petition for leave to appeal before the Supreme Court of Illinois. (Dkt. 25-11.) Petitioner did not bring a postconviction petition. This results in a potential procedural default argument. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999). Respondent, however, did not raise the procedural default in the answer resulting in a forfeiture of the affirmative defense. *Eichwedel v. Chandler*, 696 F.3d 660, 669 (7th Cir. 2012).

indistinguishable facts.'" *Premo v. Moore*, 562 U.S. 115, 128 (2011) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An 'unreasonable application' occurs when a state court 'identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of Johnson's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (opinion of O'Connor, J.)).

Clearly established federal law is the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict the Supreme Court's case law. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citations omitted).

The Court's analysis is "backward looking." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The Court is limited to reviewing the record before the state court at the time that court made its decision. *Id.* The Court is also limited in considering the Supreme Court's "precedents as of 'the time the state court renders its decision.'" *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Cullen*, 562 U.S. at 182; *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (emphasis omitted).

"The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Woodford*, 537 U.S. at 24).

Johnson's ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Johnson must demonstrate both deficient performance and prejudice. *Premo*, 562 U.S. at 121 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

In reviewing a defense counsel's closing argument, the attorney has "latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam). "Judicial review of a defense attorney's summation is therefore highly deferential and doubly deferential when it is conducted through the lens of federal habeas." *Id.* at 6.

The state appellate court decision rejecting Johnson's argument is neither contrary to, nor an unreasonable application of, *Strickland*. The state court properly identified, set forth, and applied the *Strickland* standard. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *3. The appellate court's finding that defense counsel "coherently summarized the defense

theories during closing argument and thoroughly addressed the testimony of the various witnesses, including highlighting any factual inconsistencies in the eyewitnesses' account," *id.*, is a reasonable determination in light of the record.

Defense counsel's closing argument, which spans 15 pages of the trial transcript, raises numerous coherent points including that Johnson had no connection to the victims with no motive to shoot them; that Johnson was a business man with a family suggesting he would be unlikely to commit a violent crime; and, that Johnson was disabled from the prior shooting preventing him from running or jumping on the car hood as the eyewitnesses testified. (Dkt. 25-6, pg. 31-46.) And, it should not be overlooked, that defense counsel did raise the height and shoe size issues during closing arguments. *Id.* at 33 (defense counsel referred to the disparity between Johnson's shoe size and size of the recovered boot print from the crime scene multiple times; most notably when counsel referred to the prosecution's theory—that Johnson "is such a master criminal, he is such a devious, horrible criminal, that he's putting on nine and nine and one-half inch boots, to kill these people" --- as "nonsense" and "absurd."). Johnson cannot demonstrate deficient performance by defense counsel.

Additionally, Johnson cannot demonstrate prejudice. There were multiple eyewitnesses identifying Johnson as the shooter. *See Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (internal quotation marks and citation omitted) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). Johnson's car was also identified at the crime scene, and later found burned out with the license plates removed suggesting an attempt to conceal its involvement in the crime.

In sum, the state appellate court decision rejecting Johnson's argument was neither

contrary to, nor an unreasonable application of, clearly established federal law. Argument one is denied.

**B.     Argument Two**

Johnson argues that his trial counsel was ineffective for failing to call additional expert witnesses. Although defense counsel called a medical expert regarding Johnson's injuries from his prior shooting, Johnson believes his attorney should have also obtained an expert regarding the reliability of eyewitness identification as well as an expert on height and shoe size issues to bolster Johnson's misidentification argument. Johnson also argues that defense counsel failed to object to the prosecution's shoe expert because there was no evidence suggesting that the boots seized at Johnson's son's home were Johnson's, or that the shoe print recovered at the scene was made by Johnson.

**1.     Lack of Defense Eyewitness Expert**

Turning to Johnson's argument that trial counsel was ineffective for failing to call an expert witness as to the reliability of eyewitness identification, the state appellate court concluded that counsel was not ineffective under *Strickland*. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *4. The appellate court held that the question of whether to call an expert was a matter of trial strategy which is generally immune from review under *Strickland* unless there is no plausible basis to support counsel's decision. *Id*. The state court concluded that trial counsel's action of thoroughly cross examining witnesses and highlighting inconsistencies in the prosecution's case demonstrated effective assistance of counsel. *Id*.

A counsel's strategic choices made after a thorough investigation of the law and facts are virtually unchallengeable, while strategic choices made after less than a complete investigation

are reasonable to the extent that they are consistent with reasonable professional judgment. *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (citing *Strickland*, 466 U.S. at 690-91). There is no evidence in the record to suggest that defense counsel declined to call an eyewitness identification expert after a thorough investigation of the law and facts, meaning the issue is evaluated within the bounds of reasonable professional judgment.

Illinois law allows expert testimony if the witness's "experience and qualifications allow him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson v. Gordon*, 851 N.E.2d 1231, 1240 (Ill. 2006) (citation omitted). At the time of Johnson's trial in 2011, although expert testimony on the reliability of eyewitness identification was theoretically admissible, Illinois courts "expressed skepticism and caution against the overuse of such testimony," so that the "exclusion of such testimony [was a] common practice in Illinois . . . ." *Illinois v. Lerma*, 47 N.E.3d 985, 992-93 (Ill. 2016) (citing *Illinois v. Enis*, 564 N.E.2d 1155, 1164-65 (1990); *Illinois v. McGhee*, 964 N.E.2d 715, 730 (Ill. App. Ct. 2012)).[2]

"Counsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) (citing *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004); *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996)). Defense counsel cannot be faulted for failing to pursue an expert on eyewitness identification when Illinois law was hostile to the admission of this type of expert testimony.

Despite the lack of an expert, defense counsel still cross examined the eyewitnesses attempting to demonstrate inconsistencies in their testimonies. The state appellate court

2 In 2016, the Supreme Court of Illinois reversed course, instructing that "the developing (cont...) research concerning eyewitness identifications . . . is well settled, well supported, and in appropriate cases a perfectly proper subject for expert testimony." *Lerma*, 47 N.E.3d at 993.

concluded counsel's actions at cross examination attempting to undermine the eyewitness testimony was proper. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *4. The Court cannot say the state court determination was contrary to, or an unreasonable application of, clearly established federal law. Johnson's argument on the failure to obtain an eyewitness-identification expert is rejected.

## 2. Lack of Defense Height and Shoe Size Expert

Johnson next challenges his defense counsel's failure to obtain an expert witness regarding his height and shoe size to strengthen his misidentification argument. Respondent counters that this argument is procedurally defaulted.

Johnson asserted that trial counsel was ineffective for failing to call expert witnesses regarding his height and shoe size before the state appellate court on direct appeal, (Dkt. 25-7, pg. 28.), and the appellate court adjudicated that argument. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *4. This argument, however, was not raised in his petition for leave to appeal (PLA) before the Supreme Court of Illinois on direct appeal. (Dkt. 25-11.) Additionally, Johnson has not brought a postconviction petition.

"To obtain federal habeas review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)); *see also* 28 U.S.C. § 2254(b)(1). This includes presenting the claims in a PLA before the Supreme Court of Illinois. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999)). Respondent is correct that Johnson's argument is procedurally defaulted because he failed to raise it in his PLA on direct appeal, and did not bring a postconviction petition.

Johnson cannot excuse his defaults under either cause and prejudice, or fundamental miscarriage of justice. First, Johnson did not raise either ground to excuse his default resulting in a forfeiture. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 n.6 (7th Cir. 2001). Forfeiture aside, he cannot demonstrate relief under either standard.

Regarding cause and prejudice, cause is an "'objective factor, external to [Johnson] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest*, 474 F.3d at 930 (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). The first two types of cause are not applicable to this case.

Ineffective assistance of counsel also does not excuse the default. An ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Johnson never raised an ineffective assistance of counsel argument for failing to raise this underlying argument.

The fact that Johnson exhausted an argument of ineffective assistance of trial counsel for failing to call an expert on eyewitness identification does not excuse his default of his argument that counsel was ineffective for failing to call an expert on his height and shoesize. As previously mentioned, although ineffective assistance of counsel is a single claim, *Pole*, 570 F.3d at 934 (citing *Peoples*, 403 F.3d at 848), Johnson must raise the particular factual basis for each aspect of the alleged ineffective assistance of counsel to preserve the respective argument.

*Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [Johnson] must have 'identified the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). "Petitioner cannot argue one theory [of ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Johnson*, 574 F.3d at 432 (citing *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998)).

Johnson's difficulties with his postconviction counsel, Mr. Piet, also do not excuse his default. Privately retained attorneys represented Johnson in his state court proceedings. David Wiener and Jack Wilk represented Johnson at trial. A different attorney, Elliott T. Price, represented Johnson in his appellate and PLA proceedings on direct appeal. Johnson retained Mr. Piet for his postconviction. Johnson does not dispute Respondent's representation that Mr. Piet never filed a postconviction petition. Despite claiming to hire a new lawyer after Mr. Piet, Johnson provides no evidence that a postconviction petition was ever filed.

The record presents a dispute over the scope of Mr. Piet's representation of Johnson. Johnson claims his family paid Mr. Piet to represent him in his postconviction proceeding. Piet responded, according to the assistant attorney general's status report relating a phone call with Piet, that he was hired to only review the case.

Piet's May 27, 2016 letter to Johnson tells a different story. (Dkt. 23, pg. 4.) Piet's letter implicitly acknowledges his responsibility for filing a postconviction petition, but claims his "hands are tied" due to a lack of cooperation from Johnson's family providing promised

16

evidence in support of the petition, and payment due for Piet's services. *Id.*

The general rule is that failures by a prisoner's postconviction attorney are attributable to the prisoner and do not constitute cause to excuse a procedural default. *Maples v. Thomas*, 565 U.S. 266, 280-81 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Thus, any alleged failing by Piet would not excuse Johnson's procedural default.

The Supreme Court does, however, recognize a limited exception to this general rule. "'A procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the State's initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino v. Thaler*, 569 U.S. 413, 417 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2011)).

However, the Seventh Circuit in *Crutchfield v. Dennison*, held that *Martinez* and *Trevino* are inapplicable to habeas corpus petitions challenging Illinois convictions. 910 F.3d 968, 971 (7th Cir. 2018). This is because Illinois gives prisoners a meaningful opportunity to raise ineffective assistance of trial counsel arguments on direct review resulting in *Martinez* and *Trevino* being unavailable to Illinois prisoners. *Id.* at 976-78. In fact, Johnson raised multiple ineffective assistance of trial counsel arguments in his direct appeal. Consequently, Johnson cannot receive the benefit of *Martinez* and *Trevino*.

*Maples v. Thomas*, 565 U.S. 266 (2012), is also unhelpful to Johnson. *Maples* holds that a prisoner cannot be held liable for a procedural default resulting from attorney abandonment. 565 U.S. at 283. Abandonment occurs when there is a "'near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years.'" *Id.* at 282 (quoting *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J.,

17

concurring)). A prisoner cannot "be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples*, 565 U.S. at 283.

There is no indication of abandonment in the present case. There is no dispute that Mr. Piet responded to Johnson's inquiry informing him of his difficulties in obtaining witnesses and payment from Johnson's family. Johnson was put on notice of the difficulties Mr. Piet encountered and his attorney's need for Johnson's assistance to resolve the issues with Johnson's family. This is not a situation of a prisoner lacking reason to believe that his attorney was not representing him.

This leaves Johnson with the fundamental miscarriage of justice (actual innocence) gateway to excuse his default. To show actual innocence to defeat a default, Johnson must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Johnson must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).

Johnson cannot meet this standard. He presents no new evidence suggesting his innocence. Instead, his petition is a rehash of the evidence presented at trial. The jury rejected Johnson's arguments, instead believing the multiple eyewitnesses who identified Johnson as the shooter. Johnson cannot demonstrate actual innocence to excuse his procedural default.

Finally, assuming *arguendo* that the ineffective assistance of counsel argument is not procedurally defaulted, the Court would still deny it on the merits. The state appellate court rejected this argument explaining that trial counsel performance was reasonable because Johnson testified to his height and shoe size. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *4. The state court's rejection of this issue is not contrary to, nor an unreasonable application of, *Strickland*.

The Court fails to see how an expert would be helpful regarding Johnson's height or shoe size. An expert is necessary when testifying about a subject that is not common to a layperson. *Thompson*, 851 N.E.2d at 1240. Johnson testified about his height and shoe size --- two very common matters that are certainly within a layperson's understanding. Moreover, Johnson was present throughout the course of his trial, and took the stand to testify on his own behalf. This would have given the jurors multiple opportunities to view Johnson allowing them to reach their own conclusions about his size.

The only possible expert the Court could foresee a defense attorney calling would involve the shoe print evidence. However, the prosecution's own expert could not match the print at the crime scene to the boots recovered when Johnson was arrested. The jury also heard that the boots were recovered at Johnson's son's home, where Johnson was staying, and that the boots were two sizes larger than Johnson's shoe size. In sum, the issues were clearly before the

jury, and additional experts would do little to nothing to further flush out the issues for the jury.

The jury simply chose to reject Johnson's misidentification arguments, and instead credited the

eyewitnesses who identified Johnson as the shooter. The state appellate court's rejection of

Johnson's ineffective assistance of counsel argument on this point is neither contrary to, nor an

unreasonable application of, clearly established federal law. Johnson's argument is denied.

### 3.    Failure to Challenge State's Expert

Johnson's final argument is that trial counsel was ineffective for failing to object to the

prosecution's shoe print expert.[3] The expert testified that the boot print recovered at the crime

scene was the same size, style, and brand as the boots found at Johnson's son's house when

Johnson was arrested. Johnson argues that there is no evidence suggesting that the boots seized

from his son's home were Johnson's boots, or that the shooter wore boots. The state appellate

court on direct appeal rejected this argument concluding that defense counsel brought out these

issues through cross-examination. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4443315, at

*4.

Under Illinois law, the jury may hear an expert opinion on direct examination without the

expert providing the underlying facts or data. *Illinois v. Williams*, 939 N.E.2d 274-75 (Ill. 2010).

The "burden is placed upon the adverse party during cross-examination to elicit the facts

underlying the expert opinion." *Robidoux v. Oliphant*, 775 N.E.2d 987, 993 (Ill. 2002). When

evaluating the facts serving as the foundation of an expert's opinion, the trial court considers

---

3

 Petitioner raised the argument before the appellate court on direct appeal, but failed to include it
in his petition for leave to appeal before the Supreme Court of Illinois. (Dkt. 25-11.) Petitioner did
not bring a postconviction petition. This results in a potential procedural default argument.
*Boerckel*, 526 U.S. at 842-46. Respondent, however, did not raise the procedural default in the
answer resulting in forfeiture of affirmative defense. *Eichwedel*, 696 F.3d at 669.

whether the expert utilizes information that is "reasonably relied upon by experts in the particular field." *Illinois v. Lovejoy*, 919 N.E.2d 843, 868 (Ill. 2009). As long as the expert employs information reasonably relied upon by experts in her particular field, "[a]ny question about the veracity of the data, or [the expert's] reliance on it, speaks to the weight of the evidence." *Douglas v. Arlington Park Racecourse, LLC*, 117 N.E.3d 313, 319-20 (Ill. App. Ct. 2018). What weight to give to evidence is a question solely for the jury to decide. *Illinois v. Simmons*, 66 N.E.3d 360, 379 (Ill. App. Ct. 2016).

Johnson's counsel was not constitutionally ineffective for failing to raise a losing argument that Johnson now pursues. *Warren*, 712 F.3d at 1104. Johnson does not argue, and the Court does not doubt, that boots and foot prints are the type of evidence traditionally examined by experts attempting to match boots to foot prints recovered at a crime scene. Johnson's argument that there is no evidence that the boots recovered at his son's home at the time of Johnson's arrest were his boots goes to the weight of the expert testimony, not its admissibility. Furthermore, as the state appellate court recognized, defense counsel followed the proper procedure of raising these concerns through cross examination and closing argument. Finally, as an additional point, even if the foot print evidence had been excluded, this does not overcome the fact that multiple eyewitnesses identified Johnson as the shooter and placed his car at the crime scene. The state court's rejection of this argument is neither contrary to, nor an unreasonable application of, *Strickland*. Argument two is denied.

## C.    Argument Three

Johnson next argues there is prosecutorial misconduct in the closing arguments through misstatement of facts, attacks on Johnson's character, and improper remarks. Respondent's

answer does not respond to this argument. In fairness to Respondent, Johnson listed this argument in the claim section of the amended habeas corpus petition, (Dkt. 19, pg. 6.) but did not include in the memorandum attached to the petition. (Dkt. 19, pgs. 8-31.) Respondent did respond to Johnson's arguments of ineffective assistance of appellate counsel for failing to raise trial counsel's failure to object to improper prosecutorial comments and appellate counsel's failure to challenge the underlying prosecutor's conduct, but these are different arguments addressed in Arguments Nine and Ten below.

Respondent's answer also reorganized Johnson's claims. Johnson raised multiple arguments within a single argument heading, and his arguments are duplicative at times. Additionally, Respondent organized all ineffective assistance trial and appellate counsel arguments under the banner of a single claim in accordance with the case law that counsel's performance is evaluated as a whole. Respondent's answer is otherwise comprehensive and detail oriented. The Court concludes that Respondent's failure to address the present argument was simply an error, and addresses this argument on the merits. *See Lemons v. O'Sullivan*, 54 F.3d 357, 364 (7th Cir. 1995) ("Releasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him, perhaps many years after the offense, is apt to be a disproportionate sanction" to Respondent's inadvertent oversight.); *Bleiner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994) (default judgments are disfavored in habeas corpus cases).

Johnson does not identify the specific prosecutorial comments he challenges. Johnson did raise a challenge to prosecutorial comments during closing arguments in his direct appeal. (Dkt. 25-7, pg. 30-35.) The state appellate court, however, did not reach the merits of the argument, instead finding the argument was defaulted because it was not properly preserved

through the required trial objection and posttrial motion. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *5. This failing could result in a procedural default of the argument before this Court as an adequate and independent state ground of review. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). The problem for Respondent is he did not answer the argument at all, and therefore did not assert the procedural default affirmative defense. The procedural default defense is forfeited. *Eichwedel*, 696 F.3d at 669.

This leaves the Court with a review of the argument on the merits. The state appellate court was clear that it rejected Johnson's argument due to his failing to preserve it in the trial court. *Johnson*, 2014 IL App (1st) 132036-U, 2014 WL 4243315, at *5. "Where the state courts did not reach a federal constitutional issue, the claim is reviewed *de novo*," and Courts addressing such a § 2254 claim "review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we dispose of the matter as law and justice require." *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (internal quotation marks and citations omitted).

A prosecutor's comments violate due process if: (1) the comments are improper; and, (2) the improper comments violated the prisoner's right to a fair trial in context of the record as a whole. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Ellison v. Acevedo*, 593 F.3d 625, 635-36 (7th Cir. 2010). It is not enough that the challenged comments were improper and prejudicial, instead, "'the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ellison*, 593 F.3d at 636 (quoting *Darden*, 477 U.S. at 181). Factors for the Court to consider in evaluating whether there is a due process violation include: "'(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether Johnson

23

invited the response, (4) the trial court's instructions, (5) the weight of the evidence against Johnson, and (6) the Johnson's opportunity to rebut.'" *Ellison*, 593 F.3d at 636 (quoting *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000)). As Johnson points to no specific comments, the Court has reviewed the prosecutor's closing arguments in full. The Court sees no error resulting in a due process violation under *Darden*. Argument Three is denied.

### D.    Argument Four

Johnson claims in argument four that his trial counsel was ineffective for failing to consult an expert in footwear. He believes an expert would have helped to rebut the state's expert regarding the boot print found at the crime scene, and bolstered the defense's argument that the case was one of a mistaken identification. This is a duplication of the argument previously presented in Argument Two. As explained in Argument Two, this argument is both procedurally defaulted and meritless.

### E.    Argument Five

Argument five alleges that Johnson's trial counsel was ineffective for failing to conduct a more thorough investigation of Johnson's height or obtain an expert regarding Johnson's height. Johnson also argues that trial counsel should have challenged the introduction of the boots seized from his son's house. Johnson alleges there was no evidence linking him to the boots. This is a duplication of the arguments previously presented in Argument Two. As explained in Argument Two, this argument is both procedurally defaulted and meritless.

### F.    Argument Six

Johnson argues that the police violated the Fourth Amendment when it arrested him at his son's house and seized the boots. He claims the police unlawfully entered the home, and

then later coerced his son into consenting to the search after the fact. Johnson points to the fact that police report stated the entry into the home occurred two hours prior to his son purporting to give consent to the search. Johnson believes his trial attorney was ineffective for failing to bring a Fourth Amendment challenge.

Respondent is correct that Johnson never presented his argument to the state courts. It is procedurally defaulted. *Johnson*, 574 F.3d at 431. Additionally, as explained in Argument Two, Johnson cannot excuse his procedural default under either cause and prejudice or fundamental miscarriage of justice.

Beyond the default, the argument is meritless. When evaluating an ineffective assistance of counsel argument for failing to raise a Fourth Amendment challenge, the Court applies the traditional *Strickland* elements of evaluating counsel's performance and prejudice. *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). Regarding the prejudice prong, Johnson must show, "'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ebert*, 610 F.3d at 411 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Johnson cannot meet the *Kimmelman* requirement for demonstrating prejudice because there is no reasonable probability that the verdict would have been different even if his counsel had brought a Fourth Amendment challenge. A challenge would have only impacted the introduction of the seized boots. The prosecution's strongest evidence --- the multiple eyewitnesses identifying Johnson as the shooter and placing his car at the scene --- would not have been impacted by the Fourth Amendment challenge. Johnson cannot demonstrate

prejudice.

Johnson's argument is procedurally defaulted, and also meritless. Argument Six is denied.

## G.     Argument Seven

Johnson's seventh argument is that trial counsel was ineffective for failing to investigate the crime scene. In specific, he challenges counsel's failure to investigate whether "pod" cameras recorded the shooting. Johnson does not explain what a "pod" camera is, but the Court presumes it to be a surveillance camera. The gist of Johnson's argument is that a recording of the event might have contradicted the eyewitness testimony identifying Johnson as the shooter.

Respondent is correct that Johnson never presented his argument to the state courts. It is procedurally defaulted. *Johnson*, 574 F.3d at 431. Additionally, as explained in Argument Two, Johnson cannot excuse his procedural default under either cause and prejudice or fundamental miscarriage of justice.

Beyond the default, the argument is meritless. "'[A] [P]etitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the [C]ourt sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)). Johnson provides no evidence to suggest that the pod cameras existed or that their recording of the incident could have helped his case. His argument is meritless in addition to procedurally defaulted. Argument Seven is denied.

## H.     Argument Eight

Johnson's next argument is that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel argument on direct appeal regarding the cross examination of Lernard Williams. Williams was one of the eyewitnesses who identified Johnson as the shooter. Johnson argues there is a prior inconsistent statement made by Williams in which he claimed to have not seen the shooter's face. Johnson asserts that his trial counsel was prohibited from cross examining Williams on this prior statement due to a discovery violation. He argues his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in the state court direct appeal.

Respondent is correct that Johnson never presented his argument to the state courts. It is procedurally defaulted. *Johnson*, 574 F.3d at 431. Additionally, as explained in Argument Two, Johnson cannot excuse his procedural default under either cause and prejudice or fundamental miscarriage of justice.

Regarding the merits of Johnson's argument, Williams was one of many eyewitnesses who identified Johnson as the shooter. Any deficiencies regarding the cross examination of Williams does not alter the fact that multiple other witnesses identified Johnson as the shooter, and placed his car at the murder scene. Argument Eight is denied.


I.      **Arguments Nine and Ten**

In Argument Nine, Johnson argues that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's alleged ineffectiveness regarding the trial attorney's failure to challenge the prosecutor's misconduct during closing arguments. Argument Ten alleges ineffective assistance of appellate counsel for failing to raise the underlying alleged

prosecutorial misconduct as an issue on direct appeal.

Respondent is correct that Johnson never presented his arguments to the state courts. They are procedurally defaulted. *Johnson*, 574 F.3d at 431. Additionally, as explained in Argument Two, Johnson cannot excuse his procedural default under either cause and prejudice or fundamental miscarriage of justice.

Beyond the default, as explained above in Argument Three, the underlying challenge to the prosecutor's conduct during closing arguments is meritless. Thus, appellate counsel cannot be faulted for failing to raise the underlying issue of the prosecutor's closing arguments as an issue on direct appeal, or the trial counsel's failure to raise an objection. Appellate counsel had no obligation to raise these losing arguments. *Warren*, 712 F.3d at 1104. Arguments Nine and Ten are denied. All arguments are denied. The habeas corpus petition is denied on the merits.

## III.     Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Johnson cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Johnson's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Johnson is advised that this is a final decision ending his case in this Court. If Johnson wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Johnson need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Johnson wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or

60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. Conclusion

Johnson's amended petition (Dkt. 19) is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent Kimberly Butler from the docket; (2) add Randy Pfister, Warden, Stateville Correctional Center as Respondent; (3) alter the case caption to *Johnson v.*

*Pfister*; (4) update Johnson's address on the docket to reflect that he is incarcerated at the Stateville Correctional Center; and, (5) enter a judgment in favor of Respondent and against Johnson.   Civil Case Terminated.

ENTERED:

Dated: 10/2/19

MARTHA M. PACOLD
United States District Judge